IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NERIUM SKINCARE, INC. on behalf   §
Of itself and in a derivative capacity for   §
Nerium International, LLC, and   §
NERIUM BIOTECHNOLOGY, INC.,   §
  §
    Plaintiffs,   §
  §
V.   §   No. 3:16-cv-1217-B
  §
JEFF A. OLSON, NERIUM   §
INTERNATIONAL, LLC, and JO   §
PRODUCTS LLC,   §
  §
    Defendants.   §

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## DEFENDANT NERIUM INTERNATIONAL, LLC'S MOTION TO COMPEL[1]

Defendant Nerium International, LLC ("NI") has filed a Motion to Compel, *see* Dkt. No. 51 (the "MTC"), which United States District Judge Jane J. Boyle has referred to the undersigned United States magistrate judge for determination under 28 U.S.C. § 636(b), *see* Dkt. No. 143.

At the Court's direction, *see* Dkt. No. 144, NI and Plaintiffs Nerium SkinCare, Inc. and Nerium Biotechnology, Inc. ("Plaintiffs") filed a December 15, 2016 Amended

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

and Supplemental Joint Report on Defendant's Motion to Compel, *see* Dkt. 148 (the "Supplemental JSR").

In the Supplemental JSR, the parties reported that the requests still in dispute on the MTC are Nerium International Request for Production ("RFP") Nos. 45, 36, 39, 41, 42, 43, 44, 46, and 47. *See id.*

The Court then set the MTC for oral argument but advised the parties "that the Court will not hear argument at that time on Nerium International Request for Production Nos. 46 and 47 and will defer ruling on the motion to compel as to those two requests pending further proceedings before United States District Judge Jane Boyle on Plaintiffs' Application to Compel Inspection of Records and Information." Dkt. No. 155.

The Court heard oral argument on the MTC on January 18, 2017. *See* Dkt. No. 173. Based on the Supplemental JSR and the discussion with and arguments of counsel at the oral argument, the Court now GRANTS in part and DENIES in part NI's MTC to the extent and for the reasons explained below.

## Legal Standards

"Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015).

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34. *See* FED. R. CIV. P. 37(a)(3)(B)(iv). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

In response to a Rule 34 request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). General or boilerplate objections are invalid, and "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. Amended Federal Rule of Civil Procedure 34(b)(2) effectively codifies this requirement, at least in part: 'An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.'" *OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d. 476, 507 (N.D. Tex. 2016) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014); quoting FED. R. CIV. P. 34(b)(2)(C)), *objections overruled*, No. 3:13-cv-2110-KS, 2016 WL

5942223 (N.D. Tex. Oct. 13, 2016). In sum, "[a] party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Heller*, 303 F.R.D. at 485.

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

And the Court has previously explained that "responding to interrogatories and documents requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure"; "this manner of responding to a document request or

interrogatory leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be"; "outside of the privilege and work product context..., responding to a document request or interrogatory 'subject to' and 'without waiving' objections is not consistent with the Federal Rules or warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; "a responding party has a duty to respond to or answer a discovery request to the extent that it is not objectionable" and "must describe what portions of the interrogatory or document request it is, and what portions it is not, answering or responding to based on its objections and why"; "if the request is truly objectionable – that is, the information or documents sought are not properly discoverable under the Federal Rules – the responding party should stand on an objection so far as it goes"; and, "as a general matter, if an objection does not preclude or prevent a response or answer, at least in part, the objection is improper and should not be made." *Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 470 (N.D. Tex. 2015) (quoting *Heller*, 303 F.R.D. at 487-88 (internal quotation marks omitted)).

Further, "as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). "If a party fails to timely respond in writing after being served with a request for production of documents, it is appropriate for the Court to find that the party's objections are waived, unless the court finds good cause and excuses th at failure." *Richmond v. SW Closeouts, Inc.*, No.

3:14-cv-4298-K, 2016 WL 3090672, at *5 (N.D. Tex. June 2, 2016); *accord Henderson v. Union Pac. R.R. Co.*, No. CV 15-0669, 2016 WL 5936889, at *2 (W.D. La. Oct. 11, 2016) ("Although Rule 34 does not provide that untimely objections are waived, the Fifth Circuit has found that the waiver provision applies equally to Rule 34." (Citing *In re United States*, 864 F.2d at 1156)). And, even where the responding party has timely served some objections, this waiver extends to any grounds not stated in a timely objection. *See* FED. R. CIV. P. 34(b)(2)(B); *cf.* FED. R. CIV. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

A party who has objected to a discovery request then must, in response to a motion to compel, urge and argue in support of its objection to a request, and, if it does not, it waives the objection. *See OrchestrateHR*, 178 F. Supp. 3d at 507 (citing *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999)).

Federal Rules of Civil Procedure Rules 26(b) and 34 have been amended, effective December 1, 2015. Rule 26(b)(1) now provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

For the reasons the Court has previously explained, the Court concludes that the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr*, 312 F.R.D. at 463-69. Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality

calculation mandated by Federal Rule of Civil Procedure 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; that party is also subject to Federal Rule of Civil Procedure 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f

a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller*, 303 F.R.D. at 475-77, 493-95.

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the

motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

## Analysis

I. <u>Nerium International Request for Production No. 45</u>

This request seeks "[a]ll documents relating to the possibility of supplying or selling to any person or entity other than Nerium International any product described in Exhibit C of the Company Agreement." Plaintiffs responded:

> Plaintiff objects that this request is overbroad, unduly burdensome, and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. The Company Agreement does not prohibit Plaintiff from exploring the "possibility" of supplying products through another distributor, especially in light of NI's persistent selling of competitive products that undercut sales of the Product Line and materially breach the agreement. Moreover, it expressly allows Plaintiff to sell the Product Line over-the-counter and in certain regions of the world. Subject to these objections, Plaintiff has already produced responsive documents. *See, e.g.,* Bates NSC_0025309, NSC_0030248, NSC_0034087, NSC_0035946, NSC_0037389, NSC_0037576. Plaintiff will not search for additional responsive documents.

NI contends that "Plaintiffs transferred to Nerium International, nonrefundably, the exclusive right to the vast majority of the products described on Exhibit C of the Company Agreement (Doc. 57, p. 60), and a non-exclusive right to the rest, as their capital contribution in return for a 30 percent ownership in the company"; that "[t]hese

rights, which are not limited to products Nerium International chooses to market, are among the most critical assets Nerium International owns"; that, "[a]ccordingly, the threatened or actual sale of any exclusive products on Exhibit C is the central basis of Nerium International's counterclaim that Plaintiffs have violated or are preparing to violate the exclusivity provisions of the Company Agreement"; and that "[e]ven threatened violation impairs the value of those exclusive rights, and causes seismic tremors throughout Nerium International's salesforce." Dkt. No. 148 at 2. NI further argues that "Plaintiffs' conduct in marketing products to third parties is relevant to Nerium International's claim that Plaintiffs are not using "best efforts" to develop and expand the Product Line and not offering all products within the Product Line to Nerium International, whether those products fall within the exclusive relationship or the non-exclusive relationship," and that "Plaintiffs' discussions and marketing efforts are relevant to it to Nerium International's claim that in the Company Agreement, Plaintiffs delegated to Olson the sole and exclusive authority to evaluate and negotiate potential markets and distribution channels for those exclusive products." *Id.* at 2-3.

NI reports that "Plaintiffs admit to communications with a company called Rain International and with RexCure/Aloe Veritas/HW&B, and that Plaintiffs have been actively mining the direct marketing industry (including attending its conferences), telling potential business partners that they are interested in discussing a business relationship," and NI argues that "[d]ocuments pertaining to these discussions, showing Plaintiffs efforts over time to market exclusive products to third parties,

including what they were saying about the proposed products and Nerium International along the way, and the terms of any agreements reached, are relevant to both Nerium International's affirmative claims and its defense of Plaintiffs claims, and are squarely encompassed by the pending discovery request, served on each Plaintiff eight months ago, on April 15, 2016." *Id.* at 3. According to NI, even if "Plaintiffs believe Defendant's claim for breach of contract is somehow invalid, and assume they will ultimately win on the merits," the discovery sought "is squarely relevant to Nerium International's pending claim, which suffices under the Federal Rules of Civil Procedure." *Id.* at 3-4.

NI further contends that, while "Plaintiffs complain about the sales performance of Nerium International," "the harm inflicted by Nerium SkinCare's conduct, including its numerous discussions with third parties about undermining Nerium International's exclusive rights, is certainly contributing to any sales concerns about which Plaintiffs complain," such that "even potential violations of exclusivity are relevant, not only to Nerium International's claim for breach of contract and injunctive relief, but also its defense of Plaintiffs' affirmative claims." *Id.* at 3. And, according to NI, while "Plaintiffs and Defendant disagree over the interpretation of what is exclusive and what is non-exclusive, making it important to know the full range of any such discussions," "even discussions about the sale of non-exclusive products are relevant to the 'best efforts' claim and whether Plaintiffs are offering all products to Nerium International." *Id.* (emphasis removed).

Plaintiffs respond that "it is important to distinguish between communications relating to the possibility of selling Plaintiffs' products to third parties, and those relating to actual distribution" and that "[a]ll of the documents at issue in this joint report relate to the former category, for which there is no basis for discovery." *Id.* at 5 (emphasis removed). Plaintiffs contend that "[t]here is no cause of action for breach of contract based on considering the possibility of (alleged) breach by selling product to various third parties" and that "[t]he Company Agreement only prohibits actual distribution, not talking, and (as noted below) even that prohibition is now excused." *Id.* (emphasis removed). According to Plaintiffs, "[t]o allow such intrusive discovery by Plaintiffs' competitor would seriously damage Plaintiffs' business interests," where "Plaintiffs were and are continuing to search for other partners to sell its products, which Defendant refuses to sell in violation of its own obligations under the Company Agreement," and "Plaintiffs are well within their rights to talk to other people." *Id.* Plaintiffs contend that "[t]o give Defendant access to these discussions would put Nerium at a serious competitive disadvantage and hinder Plaintiffs' legitimate, ongoing business discussions," "would allow Defendant to take business countermeasures that interfere with Plaintiffs' plans," and would "have a chilling effect on Plaintiffs' future business planning activities which the Court declined to enjoin." *Id.*

Plaintiffs also contend "that 'all documents relating' to the possibility of selling products is an extremely overbroad request, even if there could be discovery regarding mere 'possibilities.'" *Id.* at 6.

At oral argument, Plaintiffs' counsel reported that Plaintiffs have not produced any documents in response to this RFP, although they have pointed to certain documents produced in response to other requests that may also be responsive to RFP No. 45.

The primary focus of the parties' disagreement as to this and the other RFPs at issue here is Plaintiffs' insistence that there is no basis for discovery in support of NI's breach-of-contract counterclaim because that claim fails as a matter of law where there is no cause of action for breach of contract based on considering the possibility of (alleged) breach by selling product to various third parties. Plaintiffs report that they will move to dismiss the counterclaim as soon as Judge Boyle lifts the ban on filing additional dispositive motions. *See* Dkt. No. 130. And Plaintiffs insist that NI is now their competitor and that NI's counterclaim is a pretext for seeking intrusive discovery to harm Plaintiffs competitively.

Judge Boyle issued a November 2, 2016 that, "[i]n light of Defendant's Second Amended Answer and Counterclaim, [denied] Plaintiffs' motion to dismiss Defendant's first amended counterclaim [] without prejudice to re-filing at a later date to be determined by the Court" and provided that, "UNTIL FURTHER NOTICE FROM THE COURT, NEITHER PARTY SHOULD FILE ANY ADDITIONAL MOTIONS TO DISMISS OR SUMMARY JUDGMENT MOTIONS IN THIS CASE." *Id.* But, even if a motion to dismiss were pending, "no federal rule, statute, or binding case law applies [ ] to automatically stay discovery pending a ruling on ... a [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss." *Escareno ex rel. A.E. v. Lundbeck, LLC*, No.

3:14-cv-257-B, 2014 WL 1976867, at *2 (N.D. Tex. May 15, 2014). "In fact, such a stay is the exception rather than the rule." *Id.* (internal quotation marks omitted). "[H]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Id.* (internal quotation marks omitted).

NI's Second Amended Counterclaim is a live pleading that alleges a pending breach-of-contract claim unless and until the Court determines otherwise on a motion or after trial. Plaintiffs cannot refuse to engage in this discovery simply because it is relevant to a claim or defense on which they believe that they will or should prevail. *See Heller*, 303 F.R.D. at 489 (citing *Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10cv00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) (even if a party "presently holds a strong belief in the merits of [the party's] litigation positions, [the party's] strong belief – whether ultimately justified or not – provides no basis for avoiding [the party's] discovery obligations created by the Federal Rules of Civil Procedure")).

The Court finds that NI has shown that the discovery sought by RFP No. 45 is relevant to its counterclaim for breach of contract, as alleged, and that this request is narrowly framed to obtain discovery relevant to that counterclaim as required by Rule 26(b)(1). The Court finds that the requested information, to the extent explained herein, is proportional to the needs of the case, considering, among other things, the importance of this information to the issues raised by NI's breach-of-contract counterclaim and the parties' relative access to this relevant information.

Plaintiffs' overbreadth objection to the use of "all documents" was not specified in their written objections. But Rule 26(b)(1) requires the Court to limit discovery to that which is proportional to the needs of the case, and all documents relating to the possibility of supplying or selling the products at issue to anyone other than NI goes too far. The Court will limit the required production to documents that – in internal notes, memoranda, or communications by, within, or among Plaintiffs or in communications between Plaintiffs and third parties – discuss, or refer to discussions of, the possibility of supplying or selling to any person or entity other than Nerium International any product described in Exhibit C of the Company Agreement.

Plaintiffs did not raise their competitive harm concerns in their written objections, but, under the circumstances, the Court declines to find them waived. But the Court does not believe that denying this requested discovery is necessary or appropriate to address them. Rather, documents produced in response to RFP No. 45 may be designated as "Attorneys' Eyes Only," pursuant to which the documents will be subject to the terms of the Agreed Protective Order [Dkt. No. 22], except that Paragraph 6 does not apply and inspection and review of the documents is permitted only to those described in subsections b., d., and e. of Paragraph 5. *See* Dkt. No. 22 at 3-4.

Finally, the parties disagree on whether RFP No. 45 covers actual agreements between Plaintiffs and any person or entity other than Nerium International for supplying or selling any product described in Exhibit C of the Company Agreement. The Court determines that Plaintiffs have the better of this argument and that the

terms of the request do not most naturally – without reading "relating to" too broadly – cover documents that represent actual, not "possib[le]," agreements.

The Court GRANTS in part and DENIES in part NI's MTC as to Nerium International Request for Production No. 45 and ORDERS that Plaintiffs must produce all responsive documents to the extent and in the manner explained above by **February 10, 2017**.

II.   <u>Nerium International Request for Production No. 36</u>

This request seeks "[a]ll communications between You and any person believed by You to be a Nerium International Brand Partner." Plaintiffs responded:

> Plaintiff objects that this request is overbroad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The mere fact that Plaintiff communicated with a Brand Partner (which could happen for countless reasons) is not relevant to any of the claims for relief. It is also not reasonably practicable to electronically search for and review communications based on who the sender or recipient subjectively believed he was communicating with. If NI provides a list of specific e-mail addresses to search for, and narrows the scope of its request to a relevant subject matter, Plaintiff will reconsider its objections.

NI contends that "Plaintiffs admit these communications took place, but downplay them as irrelevant. They are, however, directly relevant to a pled claim." Dkt. No. 148 at 7. According to NI, one of its "one of Nerium International's central assertions is that Plaintiffs have breached, are breaching, and will further breach the Company Agreement in an attempt to destroy the company" and that "Plaintiffs have attempted to strike a deal with members of Defendant's own salesforce (known as Brand Partners) to distribute exclusive products without Defendant, in violation of the

Company Agreement." *Id.* at 6-7. NI asserts that it "is entitled to review the documents squarely underlying its claims and understand the full scope of Plaintiffs' activities to harm the company and breach the contract." *Id.* at 7.

Plaintiffs repeat their response as to RFP No. 45 and further assert that they "are not parties to the alleged contracts between Defendant and unspecified Brand Partners" on which NI relies in support of this discovery and that "[t]here is not and could not be a claim that Plaintiffs breached or even tortiously interfered with those alleged contracts." *Id.* at 7-8. And Plaintiffs contend that "the request for 'all' communications with the Brand Partners, without limitation, is overbroad and encompasses more than just the specific types of communications that Defendants erroneously claim to be relevant." *Id.* at 8.

The Court finds that this request, as drafted, is overbroad and is not proportional to the needs of the case, considering, in light of the Court's ruling as to RFP No. 45, the relative importance (if any) to NI's counterclaim of any additional communications that would not already be responsive to RFP No. 45.

The Court therefore DENIES NI's MTC as to Nerium International Request for Production No. 36.

III.   <u>Nerium International Request for Production No. 39</u>

This request seeks "[a]ll communications with or about: (1) Rain International; (2) Jeunesse; or (3) any other multi-marketing, direct-marketing, or direct-sales company." Plaintiffs responded:

-18-

Plaintiff objects that this request is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff is not prohibited from talking to other multi-level marketing companies. Further, the request is unduly burdensome. Plaintiff has occasionally received solicitations from various marketing companies around the world (without accepting them), and the probative value of such documents does not justify the burden of searching for them. If NI narrows its request to a relevant and reasonably searchable subject matter, rather than broadly seeking "all" communications with these companies, Plaintiff will reconsider.

NI contends that "this request for production seeks information relevant to Nerium SkinCare/Biotechnology's attempts to bypass the exclusivity provisions of the Company Agreement and their failure to use 'best efforts' to develop and expand the Product Line." Dkt. No. 148 at 8. And, according to NI, "[r]evealing the full scope of Plaintiffs' efforts to undermine Nerium's standing in the direct-sales business will be centrally important to ongoing injunction issues and at trial, belying Plaintiffs' efforts to portray themselves as (now exceptionally wealthy) victims." *Id.* at 8-9.

Plaintiffs repeat their response as to RFP Nos. 45 and 36 and further assert that "communications regarding the possible sale of Plaintiffs' products (which Defendant refuses to sell) to other people are not relevant"; that "[t]he fact that Defendant claims to have been injured by such communications is of no moment"; and that, "even if the communications were relevant, this request is facially overbroad and encompasses more than just the types of communications that Defendant seeks." *Id.* at 9.

For the reasons discussed above in connection with RFP No. 45, the Court determines that the information requested by RFP No. 39 is relevant to NI's counterclaim for breach of contract, as alleged, and that this request is narrowly

framed to obtain discovery relevant to that counterclaim as required by Rule 26(b)(1). Plaintiffs' overbreadth objections are overruled, and the Court finds that the requested information is proportional to the needs of the case, considering, among other things, the importance of this information to the issues raised by NI's breach-of-contract counterclaim and the parties' relative access to this relevant information. And, as with RFP No. 45, documents produced in response to RFP No. 39 may be designated as "Attorneys' Eyes Only," pursuant to which the documents will be subject to the terms of the Agreed Protective Order [Dkt. No. 22], except that Paragraph 6 does not apply and inspection and review of the documents is permitted only to those described in subsections b., d., and e. of Paragraph 5. *See* Dkt. No. 22 at 3-4.

The Court GRANTS NI's MTC as to Nerium International Request for Production No. 39 and ORDERS that Plaintiffs must produce all responsive documents to the extent and in the manner explained above by **February 10, 2017**.

IV.   <u>Nerium International Request for Production Nos. 41, 42, and 43</u>

RFP No. 41 seeks "[a]ll communications with or about (1) Jon Penkert; (2) Jim Douville; or (3) Randy Nordyke from January 1, 2015 to present and any notes or other documents relating to any meeting or other communication." Plaintiffs responded:

> Plaintiff objects that this request is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

NI contends as to RFP No. 41 that "[t]he three referenced individuals are former high-ranking members of Defendant's salesforce" and "were involved with Plaintiffs' meeting with Rain International, described above – a competitor with whom Plaintiffs

met to discuss distributing products Nerium SkinCare represented were not being provided to Nerium International." Dkt. No. 148 at 9. NI "knows Plaintiffs' executives and Plaintiffs' counsel have had numerous communications with them, and the communications are relevant to Defendant's claim that this very conduct breached the Company Agreement," and, according to NI, "there is no suggestion they have any relationship other than in connection with Nerium business; even if Plaintiffs had attempted to demonstrate that the volume of responsive information was burdensome, the full nature and extent of their relationship would be relevant here." *Id.*

Plaintiffs repeat their response as to RFP Nos. 45 and 36 and further assert that "Plaintiffs' discussions with other people to discuss possibly doing business together, to sell products that Defendant refuses to sell, is not relevant to any claim or defense in this lawsuit, and it would seriously harm Plaintiffs if their business plans and considerations had to be revealed to a competitor." *Id.* And Plaintiffs contend, "[e]ven if they were relevant, this request is facially overbroad and not limited to such communications." *Id.*

RFP No. 42 seeks "[a]ll communications between Michael Scott and: (1) Jon Penkert; (2) Jim Douville; (3) Randy Nordyke; or (4) their counsel." Plaintiffs responded:

> Plaintiff objects that this request is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

NI contends as to RFP No. 42 that it "knows that the president of Nerium SkinCare, Michael Scott, personally met with and repeatedly communicated with one

or more of the referenced individuals, former Nerium Brand Partners now working with a competitor, as well as their legal counsel, about the possibility of distributing products Nerium SkinCare was not offering to Nerium International, and about this litigation. Those communications wreaked havoc on Defendant's sales force, necessitating a press release to attempt to calm the waters, and are the basis for a specific claim for liability in this case." Dkt. No. 148 at 10. According to NI, "[t]hey are squarely relevant, part of an express, pending claim for breach of contract, and certainly not overbroad, and should be produced." *Id*. at 10.

Plaintiffs repeat their response as to RFP Nos. 45 and 36 and further assert that "Plaintiffs' discussions with other people about the mere 'possibility' of doing business together – to sell products that Defendant refuses to sell – are not relevant to any claim or defense in this lawsuit and it would harm Plaintiffs to produce them. The fact that Defendant claims to have been injured by such communications is of no moment." *Id*. And Plaintiffs contend, "[e]ven if the communications were relevant, this request is facially overbroad and not limited to such communications." *Id*.

RFP No. 43 request seeks "[a]ll documents (including notes, recordings, agendas, summaries, or similar documents) pertaining in any way to Your meeting(s) or communications with Jon Penkert, Jim Douville, Randy Nordyke, or Rain International." Plaintiffs responded:

> Plaintiff objects that this request is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

NI contends as to RFP No. 43 that "this request goes to the heart of one of Defendant's claims – the fact of communications between executives of Plaintiff or their counsel and the referenced individuals and company about the possibility of launching a competing business in violation of the Company Agreement, with the assistance of Nerium Brand Partners who would bring their large sales organizations with them. This request has not been shown to be overbroad, and is squarely relevant as set forth above, and Plaintiffs should be ordered to respond." Dkt. No. 148 at 11.

Plaintiffs repeat their response as to RFP Nos. 45 and 36 and further assert that "Plaintiffs' discussions about the mere 'possibility' of using alternative distribution channels to sell product that Defendant refuses to sell are not relevant to any claim or defense in this lawsuit. If Defendant had this information, it could use it to develop a competitive counter-strategy." *Id.*

For the reasons discussed above as to RFP Nos. 45 and 39, the Court determines that the information requested by RFP Nos. 41, 42, and 43 is relevant to NI's counterclaim for breach of contract, as alleged, and that these requests are narrowly framed to obtain discovery relevant to that counterclaim as required by Rule 26(b)(1). Plaintiffs' objections to these requests are improper and unsupported boilerplate and are overruled. The Court finds that the requested information is proportional to the needs of the case, considering, among other things, the importance of this information to the issues raised by NI's breach-of-contract counterclaim and the parties' relative access to this relevant information. And, as with RFP No. 45, documents produced in response to RFP Nos. 41, 42, and 43 may be designated as "Attorneys' Eyes Only,"

pursuant to which the documents will be subject to the terms of the Agreed Protective Order [Dkt. No. 22], except that Paragraph 6 does not apply and inspection and review of the documents is permitted only to those described in subsections b., d., and e. of Paragraph 5. *See* Dkt. No. 22 at 3-4.

The Court GRANTS NI's MTC as to Nerium International Request for Production Nos. 41, 42, and 43 and ORDERS that Plaintiffs must produce all responsive documents to the extent and in the manner explained above by **February 10, 2017**.

V.    Nerium International Request for Production No. 44

This request seeks "[a]ll draft, proposed, potential, and final agreements (including contracts, term sheets, letters of intent, memorandums of understanding, nondisclosure agreements, informal agreements, and similar documents) between You and any multi-level-marketing, direct-sales, or direct-marketing company (other than Nerium International) or Nerium Brand Partner." Plaintiffs responded:

> Plaintiff objects that this request is overbroad, unduly burdensome, and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Plaintiff has no responsive documents.

NI contends that it "has asserted claims and defenses arising from Plaintiffs' assault on the exclusive rights they transferred to Nerium International, rights that are impacted by discussions of potential diversion as well as actual diversion. The timing, sequence, and content of these discussions permeate multiple claims and defenses in this case. Moreover, threatened breaches are the subject of Nerium

International's claim for injunctive relief, again making the extent and scope of those discussions relevant and time-sensitive." Dkt. No. 148 at 11. NI asserts that "Plaintiffs do not demonstrate how the scope is overbroad as applied to this request, such as the existence of any independent relationships or agreements that do not bear on the subject matter of this suit." *Id.* at 11-12.

Plaintiffs respond that they "will agree to produce final agreements to sell product" but object "to producing drafts, proposals, or 'potential' agreements for reasons previously explained. Exploratory discussions, short of actual sales, are not relevant, and to require Plaintiffs to produce them would cause competitive harm." *Id.* at 12. And Plaintiffs contend that "this request is overbroad in that it seeks discovery regarding agreements of any kind and not just those to sell product." *Id.*

The Court determines that, for the reasons discussed above as to RFP Nos. 45 and 39, Plaintiffs should be required to produce all of the documents requested by RFP No. 44, which the Court finds are relevant to NI's counterclaim for breach of contract, as alleged. The Court finds that this request is narrowly framed to obtain discovery relevant to that counterclaim as required by Rule 26(b)(1) and that the requested information is proportional to the needs of the case, considering, among other things, the importance of this information to the issues raised by NI's breach-of-contract counterclaim and the parties' relative access to this relevant information.

Plaintiffs have clarified that they now do have responsive documents, and Plaintiffs' objections to RFP No. 44 are improper and unsupported boilerplate and are overruled.

-25-

As with RFP No. 45, documents produced in response to RFP No. 44 may be designated as "Attorneys' Eyes Only," pursuant to which the documents will be subject to the terms of the Agreed Protective Order [Dkt. No. 22], except that Paragraph 6 does not apply and inspection and review of the documents is permitted only to those described in subsections b., d., and e. of Paragraph 5. *See* Dkt. No. 22 at 3-4.

The Court GRANTS NI's MTC as to Nerium International Request for Production No. 44 and ORDERS that Plaintiffs must produce all responsive documents to the extent and in the manner explained above by **February 10, 2017**.

VI.   Award of expenses

Considering all of the circumstances here and the Court's ruling above, the parties will bear their own expenses, including attorneys' fees, in connection with Defendant Nerium International, LLC's Motion to Compel [Dkt. No. 51].

### Conclusion

The Court GRANTS in part and DENIES in part Defendant Nerium International, LLC's Motion to Compel [Dkt. No. 51] to the extent and for the reasons explained above.

SO ORDERED.

DATED: January 20, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE